## UNITED STATES v. BERKE CAKE CO., Inc., et al.

### Cr. No. 39178.

District Court, E. D. New York.
June 18, 1943.

Harold M. Kennedy, U. S. Atty. of Brooklyn, N. Y. (John K. Carroll, Sp. Asst. to U. S. Atty. of New York City, Mario Pittoni, Asst. U. S. Atty., of Brooklyn, N. Y., and Sylvester P. Meyers, Sp. Asst. to Atty. Gen., of counsel), for plaintiff.

Scribner & Miller, of New York City (Mark Hyman, of New York City, of counsel), for defendants Berke Cake Co., Inc., E. L. K. Baking Co., Inc., and Irving Berke.

Louis Halle, of New York City (Louis Halle, of New York City, of counsel), for defendant Charles Urban.

Markewich, Rosenhaus & Markewich, of New York City (Samuel Markewich, of New York City, of counsel), for defendants Harry Meth and Joseph Bless.

BYERS, District Judge.

Demurrer to indictment.

These defendants have been indicted for a violation of 18 U.S.C.A. § 51, the material part of which reads as follows:

"If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same, * * * they shall be fined * * *."

312

The indictment describes the two corporations named as being engaged in producing and selling baking and confectionery products in interstate commerce; and alleges that the employees of the said corporations were such within the meaning of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq.

The individual defendants are described as follows: That Irving Berke was an officer of both corporations; that Moe Gertner and Charles Urban were supervisory employees thereof, and that Harry Meth, Harris Horowitz, Nathan Erlich, and Joseph Bless were, respectively business agent, president, manager, and financial secretary of Local 51, Bakery and Confectionery Workers International Union of America.

That the defendants from October 24, 1938, to the date of the filing of this indictment (May 11, 1943) did conspire "to injure, oppress, threaten and intimidate certain citizens of the United States, to wit, (then follow the names of some thirty-two individuals, all of whom were employees of the said corporations) * * *, in the free exercise and enjoyment of, and because the aforesaid employees had exercised certain rights and privileges secured to the said employees and each of them, by Section 16(b) of the Fair Labor Standards Act of 1938, * * *, to wit, the right and privilege of said employees, and each of them, to maintain in a court of competent jurisdiction an action to recover from the company defendants the amount of their unpaid minimum wage and overtime compensation and an additional equal amount as liquidated damages; and which conspiracy was performed and carried out in the manner and means as hereinafter described."

It is then averred that it was a part of the plan and purpose of the conspiracy that the corporate officers would discharge and threaten to discharge those employees who filed complaints and instituted actions under Section 16(b) of the Fair Labor Standards Act of 1938, and who refused to sign general waivers and releases of said claims and to discontinue any actions brought under the said section.

That the union officials would coerce and attempt to coerce said employees by making demand upon and otherwise attempting to influence them to sign such waivers and releases, and discontinue any such actions.

That Bless, as financial secretary, assisted by the other union officials, would refuse to accept partial payment of arrears in union dues from such employees who refused to discontinue "actions brought under Section 16(b)" of the said statute, and who refused to sign general waivers and releases of their claims, while the said officials would continue to accept part payments of arrears in union dues from employees who did not institute such actions or who signed waivers and releases; and that, as to the employees who refused to sign waivers and releases and to discontinue their actions, the said union officials would certify them to the corporate defendants as being delinquent in the payment of union dues, as a basis for discharge, "whereas in truth and in fact as all the defendants well know, said employees would be and were discharged because they refused to sign releases of their claims for unpaid minimum wage * * *, and refused to dismiss actions brought under" the appropriate section of the law.

That it was part of the conspiracy that the corporate officers and supervisory employees would compel the employees who refused to sign waivers and releases and to discontinue their actions, "to work under unfavorable conditions and would then and there discriminate against such employees in the matter of working conditions * * * with the intent and purpose of coercing said employees into discontinuing their suits and signing waivers and releases of their claims".

That it was a part of the conspiracy that the union officials would discriminate against said employees who refused to sign waivers and releases and discontinue their actions, by denying to them the benefits to which they were entitled, as members of the said union, "under new union contracts entered into by the said Local 51 and the company defendants".

If there was indeed such a conspiracy entered into as this indictment alleges, a serious violation of the law was thereby contemplated, and it should be so understood, but that does not prove that the statute relied upon is addressed to such a condition of affairs.

In the first place, the Fair Labor Standards Act 29 U.S.C.A. § 216, provides adequate penalties of civil and criminal nature for a violation of the law, and it is not easy to understand why appropriate pro-

ceedings thereunder have not been instituted, if the law has been offended; or, if these defendants have entered into a conspiracy to that end and purpose, it would seem that they could be charged with a violation of the Conspiracy statute.

The statute invoked by the indictment, however, is R.S. § 5508, 18 U.S.C.A. § 51, and in the latter compilation it appears under the chapter heading "Offenses against Elective Franchise and Civil Rights of Citizens".

The section in its present form is a reenactment of the Act of May 31, 1870, 16 Stat. 141, which had for its object the punishment of offenses against rights which it was the object of the Fourteenth and Fifteenth Amendments to the Constitution to secure; that is to say, the offenses denounced by this statute were such as tended to impair or defeat, in whole or in part, rights created by the Constitution and laws of the United States in favor of citizens as such.

The Fair Labor Standards Act has nothing whatever to do with such matters; the employees whose rights are secured thereby may or may not be citizens, and an offense against that law, if duly established, neither adds to nor subtracts from the rights which are possessed by the victims, deriving from their status as citizens, assuming all of them to be such.

The decisions cited by the Government to sustain the indictment do not touch this point; and so far as I have been able to ascertain, this is the first attempt which has been made to introduce the sanctions of R.S. § 5508, 18 U.S.C.A. § 51, as a means to enforce the provisions of the Fair Labor Standards Act, and nothing has been suggested in the brief of the Government which justifies that effort.

If Congress intended that violations of the Fair Labor Standards Act should be penalized through resort to other statutes in addition to the Act itself, appropriate language to embody that intention would have been adopted.

It is realized that this indictment probably purports to allege a conspiracy to do something in the future, although that is none too clear.

If the pleader intended to aver that certain employees had instituted litigation pursuant to the provisions of Section 16 (b), and thereafter and as a result there-of the conspiracy was entered into, he has masked the purpose pretty effectually.

Assuming that to have been the theory of the indictment, the conspiracy as alleged has no relationship to the rights and privileges of the alleged victims, as citizens of the United States.

The demurrer is sustained. Settle order.